STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,

v.

Bruce TAN and Rosemarie Tan, Defendants.

Civ. No. 87–1655–B(CM).

United States District Court, S.D. California.

Sept. 1, 1988.

Janice A. Ramsay, Jeffrey S. Calkins, Katherine T. Taub, Ramsay, Johnson & Klunder, Irvine, Cal., for plaintiff.

Marc O. Stern, San Diego, Cal., for defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BREWSTER, District Judge.

Plaintiff insurer (State Farm) issued a homeowner's policy to defendants, Bruce

Tan and Rosemarie Tan. When the Tans submitted two claims for theft loss, State Farm sought to examine them separately to resolve its suspicions of possible fraud. The Tans refused to permit State Farm to examine Bruce Tan outside the presence of Rosemarie Tan. State Farm then brought this action for a declaration that it may compel separate examinations. The parties do not dispute the facts; thus, the issue is ripe for summary judgment.

## I. JURISDICTION

The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## II. FACTS

The Tans' insurance policy contains a "cooperation clause" which confers on State Farm a contractual right to examine the Tans regarding their claims.[1] Accordingly, the parties agreed to conduct Bruce Tan's examination on October 26, 1987, and Rosemarie Tan's examination the following day.

At 9:30 a.m. on the scheduled day, counsel for State Farm arrived at the office of the Tans' attorney, accompanied by two adjusters for State Farm. Bruce Tan did not appear, but Rosemarie Tan did. State Farm proceeded to examine Rosemarie Tan. At the end of the day, Rosemarie Tan's examination was not complete. Nonetheless, the parties agreed that Bruce Tan's examination would go forward the next day.

The following day the parties reconvened at the office of the Tans' counsel. Bruce Tan and Rosemarie Tan were present. State Farm requested Rosemarie Tan to leave the examination room, but she refused. State Farm refused to examine Bruce Tan in Rosemarie Tan's presence, whereupon Bruce Tan departed. Counsel for State Farm declined to complete Rose-

marie Tan's examination prior to examining Bruce Tan. Rather, State Farm brought the instant declaratory relief action.

## III. ANALYSIS

In diversity jurisdiction cases, the court sits as a California state trial court and must apply the laws of California. *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed.2d 2079 (1945). This case is one of first impression in California, however. Thus, the court must attempt to predict how the California Supreme Court would resolve the issue. *See Molsbergen v. United States*, 757 F.2d 1016 (9th Cir.), *cert. dismissed*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985).

California rules of contract interpretation provide the guidance necessary to resolve the instant dispute. Other legal norms have no bearing on the parameters of the contractually-required extrajudicial examinations at issue here. *See Hickman v. London Assurance Corp.*, 184 Cal. 524, 532, 195 P. 45, 49 (1920).

In *Hickman*, the insured submitted a claim under a fire insurance policy that contained a cooperation clause. Because the insured was the subject of criminal charges for arson, he refused to submit to the insurer's examination, claiming a constitutional privilege against self-incrimination. The California Supreme Court held that "constitutional immunity has no application to a private examination arising out of a contractual relationship." *Id.* Accordingly, the Tans' constitutional interests in Due Process and the Confrontation Clause in this setting do not override any contractual duty the Tans might have to acquiesce in separate examinations.

The insureds argue that California courts would not interpret the cooperation clause to include a duty to submit to separate

---

1. The Cooperation Clause of the policy provides as follows:

    After a loss to which this insurance may apply, you shall see that the following duties are performed:

       .    .    .    .    .

       d. as often as we reasonably require:
       1. exhibit the damaged property;

    2. provide us with records and documents we request and permit us to make copies;
    3. submit to examinations under oath and subscribe the same; and
    4. produce employees, members of the household or others for examination under oath to the extent it is within the insured's power to do so. . . .

examinations because California courts resolve ambiguities in insurance contracts against the insurer. *See Abellon v. The Hartford,* 167 Cal.App.3d 21, 31, 212 Cal. Rptr. 852, 858 (1985). This maxim of contract interpretation is inapplicable to the present contract, however.

The cooperation clause is not ambiguous. "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL–CIO v. Martin Jaska, Inc.,* 752 F.2d 1401, 1406 (9th Cir.1985). Rather, a contract is ambiguous if it is susceptible to multiple interpretations. *In re Estate of Newmark,* 67 Cal.App.3d 350, 355, 136 Cal.Rptr. 628, 631 (1977). Plaintiffs fail to indicate which language in the cooperation clause might reasonably support two meanings. The cooperation clause simply does not address separate examinations.

When a contract fails to address an issue, the court has a duty to fill in the gaps of the contract to preserve and effectuate the overall intentions of the contracting parties. The California legislature has codified this common law principle. Cal.Civ. Code § 1656 (Deering 1971). "[A] contract includes not only the terms that have been expressly stated but those implied provisions indispensable to effectuate the intention of the parties." *Tonkin Construction Co. v. County of Humboldt,* 188 Cal.App. 3d 828, 832, 233 Cal.Rptr. 587, 588 (1987). Thus, where the cooperation clause in the instant contract fails to define the details of the duty to "submit to examinations under oath," the court has a duty to interpret the clause reasonably so as to effectuate the parties' intentions.

Nonetheless, the court must tread carefully when ascribing implicit obligations on the contracting parties. The court should not venture beyond construing the contract to effectuate the manifest intentions of the parties. The court must determine what the parties bargained for when they agreed to the terms of the cooperation clause.

The Tans bargained for the right to make an honest claim under the policy and to receive compensation with a minimum of inconvenience. In return, State Farm bargained for a reasonable means to ascertain the truth surrounding a claim. The cooperation clause embodies State Farm's right to uncover the probability of truth from the Tans.

The court must bear these interests in mind when construing the cooperation clause. Where the precise details of an agreement have not been defined by the parties, the court should assume the parties implicitly intended the agreement to operate in a reasonable manner. For example, courts routinely deem contracts to require performance within a reasonable time where the parties did not explicitly set any deadlines. *See, e.g., Wong v. Di Grazia,* 60 Cal.2d 525, 539, 386 P.2d 817, 827, 35 Cal.Rptr. 241, 251 (1963). The cooperation clause, therefore, should be deemed to allow State Farm to take reasonable steps to ascertain the truth of the claims.

Undoubtedly, separate examinations would greatly enhance State Farm's ability to discover the true facts and to assess the veracity of the Tans' claims. "The expedient of sequestration is (next to cross-examination) one of the greatest engines that the skill of man has over invented for the detection of liars...." 6 J. Wigmore, Wigmore on Evidence § 1838, at 463 (3d ed. 1940). Recognizing the advantages of sequestering witnesses, both California and federal laws of evidence permit this valuable truth-finding technique. Cal.Evid. Code § 777 (Deering 1986); Fed.R.Evid. 615.

The benefits of sequestration would accrue with private examinations as well as with courtroom testimony.

> It is logical that the taking of separate examinations under oath, without the insureds sitting in on each other's examinations, would not only lead to more accurate information, but would also discourage or even prevent fraudulent claims. At the very least, separate examinations could lead to a recount of facts as the individual insured remembers them, and circumvents the possibility that the insured's recollection of events will be sub-

**1274**

consciously altered because of suggestion from prior testimony.

*United States Fidelity & Guaranty Co. v. Hill,* 722 S.W.2d 609, 612 (Mo.Ct.App.1986) (Manford, J., dissenting).

A construction conferring the right to conduct separate examinations is reasonable from the Tans' standpoint as well. State Farm wishes to examine the insureds separately, but the examined insured may have an attorney present, and the examinations would be conducted in the insureds' attorney's office during regular business hours. The Tans cite no prejudice that would result if they submitted to separate examinations. The Tans have nothing to lose unless they have something to hide.

Thus, separate examinations are perfectly consistent with the obligations agreed to in the cooperation clause. Separate examinations will not guarantee an absence of chicanery, but they will provide a reasonable means to discover the probability of truth while causing no inconvenience to the insureds.

Authority from other jurisdictions does not persuade the court to reach a different conclusion. The court is aware of only two cases that addressed the extent of the insureds' duty to submit to separate examinations under a cooperation clause of an insurance contract. *United States Fidelity & Guaranty Co. v. Hill,* 722 S.W.2d 609 (Mo.Ct.App.1986); *Shelter Ins. Co. v. Spence,* 656 S.W.2d 36 (Tenn.Ct.App.1983). These two appellate courts split on whether an insurer may compel separate examinations.

In the earlier case, a unanimous panel held that an insurer has a right under the policy's cooperation clause to examine separately each of the two insureds making a claim. *Spence,* 656 S.W.2d at 38. The court recognized that the purpose of the cooperation clause was to permit the insurer to ascertain the true facts underlying a claim. Since separate examinations would further the quest for the truth, the court ruled that the cooperation clause permitted an insurer to compel separate examinations. *Id.*

The court in *Hill* criticized the *Spence* court for "rewriting" the insurance contract to require separate examinations. *Hill,* 722 S.W.2d at 610–11. In *Hill,* the court found no ambiguity in the cooperation clause; rather, the policy was silent on the issue of separate examinations. *Id.* at 611. The court ruled that where the language is unambiguous, a court lacks authority to add provisions to the insurance contract which would require separate examinations. *Id.*

The ruling in *Hill* does not comport with the exigencies of reality nor the laws of California. No contract can anticipate every possible contingency. Inevitably, a court will be called upon to adjudicate an issue that the contracting parties failed to address. Contrary to the ruling in *Hill,* California requires a court in such a situation to "flesh out" the express terms of the contract to effectuate the broader intentions of the parties. Cal.Civ.Code § 1656 (Deering 1971).

As outlined above, this directive requires the court to give the cooperation clause a reasonable construction which makes it meaningful. Accordingly, the court finds that State Farm may compel the Tans to submit to separate examinations. Plaintiffs shall submit a form of judgment consistent with this order.

IT IS SO ORDERED.