**UNITED STATES FIDELITY & GUARANTY COMPANY,**
Appellant,

v.

**Danny HILL & Stephanie Hill,**
Respondents.

No. WD 37579.

Missouri Court of Appeals,
Western District.

April 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

Application for Transfer Sustained Sept. 16, 1986.

Case Retransferred Jan. 20, 1987.

Court of Appeals Opinion Readopted Jan. 23, 1987.

Glenn E. McCann, Kent M. Bevan, and Theresa Shean Hall, Knipmeyer, McCann, Fish & Smith, Kansas City, for appellant.

K. Louis Caskey, Kansas City, for respondents.

Before MANFORD, P.J., and PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

USF & G filed an action for declaratory judgment against the Hills seeking a declaration that under an insurance policy the Hills were required to submit to examinations separate and apart from each other. The court held that an examination may be made of each insured separately but within the presence of the other insured. USF & G now contends the court erred in refusing to declare that the examination of the Hills would be made separately and out of the presence of the other insured. Affirmed.

USF & G issued a homeowners insurance policy to Danny Hill. His wife, Stephanie, was named as an additional insured. The policy contained the following:

2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

    \*     \*     \*     \*     \*     \*

    d. as often as we reasonably require:
      (1) exhibit the damaged property;
      (2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examination under oath and subscribe the same.

While the policy was in force Danny gave notice to USF & G that items of personal property had been stolen from his automobile. Danny later submitted a sworn statement in proof of loss in which he claimed the loss totaled $4,555. Subsequently Danny submitted a second sworn statement in proof of loss in which he claimed damages in the sum of $4,345. Stephanie did not sign either form.

Thereafter, attorneys representing USF & G wrote to the Hills requesting that Danny appear for an examination under oath and requesting Stephanie to appear for a like examination about four hours later on the same day. When the Hills appeared for their examination the attorneys representing USF & G requested that the examination under oath of each of the Hills be conducted separately and out of the presence of the other party. The Hills had an attorney at the time they appeared for their examination and the request for separate examinations out of the presence of the other party was refused.

USF & G thereupon filed its petition for declaratory judgment in which the facts above stated were alleged. The petition concluded with an allegation that USF & G is entitled to take the examination under oath of each insured separate and apart from the other without either being present during the examination of the other. No policy provision or other reason or authority was alleged as a basis for requesting the declaration of the court that the examination be separate and out of the presence of the other insured.

The Hills filed their answer and thereafter USF & G and the Hills each filed a motion for summary judgment. The court granted the Hills' motion and held that each insured was required to submit to an examination under oath and that such examination could be separately taken, but that each insured and their attorney was permitted to be in the presence of the person being examined.

USF & G does not contend that there is any issue of fact but concedes the question is purely a matter of law. No policy provision is relied upon for the proposition that the examination called for in the policy is to be conducted of each insured out of the physical presence of the other insured. USF & G contends that the policy provides that it may take more than one examination under oath. It reasons from this that because the policy gives it the option of conducting more than one examination that it, and not the insured, has the discretion of conducting the examination of each insured separate and apart from the other. USF & G also contends that more factual statements are more likely to result if the examinations are taken separately and that the worthwhile purpose of searching for the truth would be served.

The only case in which this question has been raised is *Shelter Insurance Companies v. Spence*, 656 S.W.2d 36 (Tenn.App. 1983). Virtually the same factual situation existed in *Spence* with two insureds and a request by the company that they submit to an examination separate and apart from the physical presence of each other. The court stated that more accurate factual statements could likely be taken where multiple parties are involved if the statements are taken separately. The court held that the policy provision (the same as that quoted above) required the insured to submit to an examination under oath separate and apart from the other insured. The court laid down rules by which the insurer could conduct such private examination. The court held a reasonable notice in writing stating the time and place where the examination was to be conducted must be given and the notice must designate a representative before whom the examination is to be taken. The court further held that each insured may have an attorney present at the time of the examination, but the attorney could not take part in the examination.

There is no question that the court in *Spence* rewrote the policy. There was nothing in the policy before it that stated the examination under oath would be con-

ducted separate and apart from any other insured, and certainly the conditions which the court imposed on the taking of such separate examinations were not contained in the policy.

Whatever the law may be in Tennessee, it has long been the law in this state that:

"The construction of insurance contracts are governed by the same general rules as are applied to the construction of other written contracts. 'The function of the courts is to construe them, not to make them.'" *Henderson v. Massachusetts Bonding and Insurance Co.*, 337 Mo. 1, 84 S.W.2d 922, loc. cit. 924.

*Central Surety & Insurance Corp. v. New Amsterdam Casualty Co.*, 359 Mo. 430, 222 S.W.2d 76, 78[4–6] (banc 1949). In this case USF & G does not ask this court to construe any provision of the policy, but requests this court to write additional terms into the policy. Nor does USF & G contend there is any ambiguity to be resolved in the policy provision. It is beyond argument that if the language of an insurance policy is clear and unambiguous then a court does not have the power to rewrite the policy, but must construe it as written. *Madison Block Pharmacy, Inc. v. United States Fidelity and Guaranty Co.*, 620 S.W.2d 343, 346[4] (Mo. banc 1981).

USF & G would have this court imply the right to take examinations separate and apart from the other insured from the fact that the policy grants the company the option to take more than one examination. There is certainly nothing in the power to request an insured to submit to more than one examination under oath from which it could be implied that the company had discretion to demand that the examination be separate and apart. The only way this court could reach the result requested by USF & G would be to rewrite the policy and to add provisions which are not now there nor which are contended to be contained by a reasonable construction of the language employed. USF & G would have this court undertake a complete rewriting of the provisions providing for the examination under oath. That is beyond the power of the courts in this state. *Forir v. Toman*, 202 S.W.2d 32, 34[3, 4] (Mo.1947).

The judgment is affirmed.

PRITCHARD, J. concurs.

MANFORD, J. dissents in separate opinion.

MANFORD, Presiding Judge, dissenting.

I must respectfully dissent.

In this declaratory judgment action appellant, insurer, sought interpretation of cooperation clause of policy to permit independent examinations of multiple insureds. The judgment should be reversed.

Appellant presents a sole point which in summary charges the trial court erred by erroneously declaring and applying the law in ruling that the cooperation clause within its policy did not allow the insurer the right to examine two insureds separate and apart from one another.

The material facts are not in dispute, and the majority opinion presents an accurate account thereof.

The only issue before this court is whether the cooperation clause contained within the contract of insurance gives appellant the right to insist upon the examination under oath of the insureds, separately and apart from one another. This is a case of first impression in Missouri.

The purpose of a cooperation clause is obvious: Since, in most cases, the insurer has little or no knowledge of the facts surrounding the loss, and the insured, in most cases, has exclusive knowledge of such facts, the insurer has a right to require that the insured submit to an examination under oath to enable the insurer to acquire such knowledge and information as may aid it in the investigation, or as may otherwise be significant to the insurer in determining its liability under the policy. Such examinations under oath also enable the insurer to obtain information while it is still fresh.

It is not disputed that obtaining true and accurate information as to the facts surrounding a claimed loss is relevant to the

insurer's right to investigate the validity of the claim. Fraud is not suggested in the case at bar. It is logical that the taking of separate examinations under oath, without the insureds sitting in on each other's examinations, would not only lead to more accurate information, but would also discourage or even prevent fraudulent claims. At the very least, separate examinations could lead to a recount of facts as the individual insured remembers them, and circumvents the possibility that the insured's recollection of events will be subconsciously altered because of suggestion from prior testimony.

Respondents argue that the cooperation clause is ambiguous as to the taking of separate examinations and that an ambiguity in a contract of adhesion should be resolved against the appellant. While this is a correct statement of the law, this writer fails to see wherein the clause is ambiguous. Rather, the clause is simply silent on the issue of separate examinations. There is no ambiguity to be resolved.

Respondents also argue that the taking of separate examinations invades the confidentiality of spousal communication and violates the Husband-Wife privilege. Respondents' point is not appropriate in this case because the prohibition against a husband and wife being permitted to disclose confidential communications made between them in their relation as husband and wife is a rule of evidence. The character of examinations under oath for investigatory purposes does not rise to the adversarial level wherein the rules of evidence are applicable.

This court should find the case of *Shelter Insurance Co. v. Spence*, 656 S.W.2d 36 (Tenn.App.1983), to be persuasive precedent. The facts in *Spence* are almost indistinguishable from those in this case at bar. The cooperation clause in *Spence* read as follows:

> The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same....

The insureds refused to submit to examination under oath separate and apart, and the insurer filed a declaratory judgment action. The Tennessee Court of Appeals held that the insurer had a right to take separate examinations under oath of the married insureds, and the insureds did not have the right to be in the presence of each other during the taking of their examinations. That court set out procedural safeguards that the insurer must follow in order to secure separate examinations. Those safeguards are (1) the insurer must give the insureds a reasonable notice in writing, stating a definite time and place in the county of the insured's residence, where the examination is to be held, and it must designate a representative before whom the examination is to be taken; (2) each insured may have his or her attorney present at the time of the examination, but the attorney cannot take part in the examination; and (3) after the examination is completed, the original and a copy is to be submitted to the insured for his signature. A copy of the statement taken is also to be furnished to the insured. *See Spence, supra* at 38.

In absence of authority in our own jurisdiction, our courts may look to decisions in other states and they become persuasive precedents. *See Komosa v. Monsanto Chemical Co.*, 317 S.W.2d 396, 400 (Mo. banc 1958), *Whitehorn v. Dickerson*, 419 S.W.2d 713, 718 (Mo.App.1967), and *Eyerman v. Mercantile Trust Co., N.A.*, 524 S.W.2d 210, 217 (Mo.App.1975).

In the present case the insurer has followed the applicable safeguards and this court should follow the holding in *Spence*.

This is not a case wherein the court is being asked to "make the contract", but rather, there is nothing within the cooperation clause which prohibits the separate examinations. I cannot agree with the majority's analysis that to authorize such examinations rewrites the policy. By its

judgment, the trial court has erroneously interpreted and applied the law.

The judgment should be reversed.