**UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff–Appellant,**

v.

**G. Blitz WELCH and Amanda Welch, Defendants–Appellees.**

No. 87–7238.

United States Court of Appeals, Eleventh Circuit.

Sept. 7, 1988.

Brown, Hudgens, Richardson, P.C., Mark J. Upton, Mobile, Ala., for plaintiff-appellant.

Philip H. Butler, Robison & Belser, Montgomery, Ala., for defendants-appellees.

Before JOHNSON, and CLARK, Circuit Judges, and DUMBAULD*, Senior District Judge.

DUMBAULD, Senior District Judge:

This is an appeal from a summary judgment in favor of G. Blitz Welch and Amanda Welch, his wife (the Welchs) on March 23, 1987 by the United States District Court for the Middle District of Alabama.

The question we are required to decide involves the interpretation and application, under Alabama law and the circumstances of the case at bar, of the "cooperation clause" in a fire insurance policy.

That clause [Section I—Conditions—2f(3)], reads:

In case of a loss to covered property, you must see that the following are done:

\* \* \* \* \* \*

f. as often as we reasonably require:

\* \* \* \* \* \*

(3) submit to questions under oath and sign and swear to them.

The District Court held that the insurance company was not entitled to examine the insureds under oath without permitting both of them to be present at the Examina-

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

tion of each of them. The company has appealed from that ruling.

The question is one of first impression under Alabama law. Neither the researches of counsel nor our own efforts have yielded any applicable authority.

The facts of the case may be succinctly stated.

A fire took place on April 29, 1986, destroying the Welchs' home, which was covered by a policy issued by appellant U.S.F. & G. Co. Suspecting arson, the insurer on July 17, 1986, took statements of the Welchs (apparently not under oath) and advised the Welchs that it would conduct an examination of them under oath at a later date. Such examinations never took place because the insurance company insisted upon examining each of the insured under oath separately, but each of them refused to be examined unless the other were present during the examination. The company brought suit to compel separate examination, relying on the above-quoted "cooperation clause" of the policy.

The District Court decided in accordance with the general rule that insurance policies should be construed against the insurer, since the insurance company formulates their terms, which are in substance a contract of "adhesion" rather than a document negotiated between parties of equal bargaining power.

Appellant advances substantial policy considerations in support of the contrary view. Appellant argues:

(1) that since Biblical times separate examination of witnesses ("invoking the rule") has been an effective instrument for determination of truth, which is the purpose behind the "cooperation clause" in insurance policies.

(2) that many policies are issued to multiple insureds (such as partnerships) and that inconvenience, delay, and hardship would result if all insureds had to be notified and assembled together before inquiry into a claim under the policy could be processed.

With regard to the second point, we believe that a common-sense administration of proceedings under the policy would sub-stantially avoid the burdens enumerated by appellant. The company would surely be required only to consult the convenience of the particular individual it wished to interrogate (and its own, of course) in fixing the time and place of propounding the questions to be answered under oath. It would be up to other co-owners who wished to attend to arrange their affairs so as to permit them to be present. Their attendance would not be a *conditio sine qua non* of the validity of the interrogation under oath, but merely a privilege which they would be at liberty to exercise if they conveniently could.

With regard to the first and weightier point, we agree with the District Court that strong public policy of Alabama supports the proposition that insurance companies should not be accorded *ex gratia* advantages which they did not insert in the policy when they easily could have done so.

In particular, we note that in the case at bar the company had obtained statements, apparently not under oath, from appellees before making the instant request for sworn statements. This circumstance weighs in favor of the position of the policy-holders, since the cooperation clause limits the occasions for interrogation under oath to what the company may "reasonably" demand. It may well be thought unreasonable for the company not to ask for sworn statements at the initial interrogation, rather than to await a "second bite of the cherry."

Accordingly we feel greater confidence in affirming the judgment below than if the question of interpreting the policy had arisen on the first occasion that the company questioned the appellees.

But in any event we are satisfied that the well-settled rule upon which the District Court relied is strongly supported by the public policy disclosed in the Alabama decisions.

Thus in *Trinity Universal Ins. Co. v. Wills*, 273 Ala. 648, 143 So.2d 846, 847 (1962) the court declared: "As this court has so often said, insurance policies will be construed most strongly against the insur-

er." In *Commercial Standard Ins. Co. v. New Amsterdam Casualty Co.*, 272 Ala. 357, 131 So.2d 182, 184 (1961) the court pointed out that "The general rule is that insurance policies should be liberally construed in favor of the insured and words of the policy must be given their ordinary and generally understood meaning." In *Colonial Life & Accident Ins. Co. v. Shotts*, 267 Ala. 525, 103 So.2d 181, 182 (1958) the court said: "It is a well known principle that insurance policies being framed by the insurer are to be construed favorably to the insured."

We agree with appellant that its right to obtain sworn statements arises from the policy provisions and is contractual in nature, and is not to be confused with procedures authorized by statute for taking depositions.[1] Nevertheless, that circumstance does not strengthen appellant's position. On the contrary, it strengthens appellees contention that appellant's right must be squarely based upon the policy terms, and not expanded by "spurious interpretation."[2] As in Shylock's case, appellant's rights are limited to what is "nominated in the bond."[3]

Under the terms of the co-operation clause the policy-holders' obligation is simply (1) to "submit to questions under oath" [meaning to be' under oath when submitting to questions, rather than that the questions themselves must be verified under oath by a representative of the insurance company]; and (2) to "sign and swear to them" [*sic;* meaning no doubt to sign and swear to the *answers* rather than to the *questions*].[4]

This provision would be fully complied with if each appellee in the presence of his or her spouse gave answers to the questions propounded on behalf of the company, and signed and swore to his or her answers so given. Appellant would have received such answers, in complete compliance with the co-operation clause, if it had not insisted upon receiving more than it was entitled to under the clause. Hence there was no breach of the clause on the part of appellees, since they were ready and willing to comply with the cooperation clause, and their failure to give, sign, and swear to the answers was due to appellant's insistence upon an additional demand, not found in or founded upon the policy terms.

Under these circumstances, we are satisfied that the judgment of the District Court must be

AFFIRMED.

---

1. We think it plain that the District Court did not ignore this distinction. In the passage quoted in Appellant's Brief, p. 9, the District Court by the word "deposition" taken "under the policy" did not confuse the two procedures, but was merely using a synonym referring to oral examinations under oath not taken at trial but before trial.

2. On genuine and spurious interpretation, see Roscoe Pound, *Jurisprudence* (1959) III, 479 *et seq.*

3. William Shakespeare, *The Merchant of Venice*, Act IV, sc. 1, 1. 257.

4. The insurer is obviously responsible for any defective draftsmanship and the policy-holder should not suffer disadvantage therefrom.