Mohammad LIDAWI and Zeina
Mohamad, Appellants,

v.

PROGRESSIVE COUNTY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 14–02–00908–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 17, 2003.

Michael C. Engelhart, Houston, for appellants.

Mark Lapidus, Houston, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

In this case arising from denial of an insurance claim based on the insured's non-cooperation, we address an issue of first impression: whether clauses in an insurance contract requiring the insured to cooperate in the investigation of a claim and to submit to an examination under oath (EUO) permit the insurance company to require separate, segregated examinations of the insureds. We conclude that when, under the terms of an insurance policy a person may be required to submit to an EUO, it is reasonable to infer that the insurer may require such examination to be separate and segregated from the examination of any other person. Accordingly, we affirm that part of the trial court's judgment declaring that the Standard Texas Personal Auto Policy at issue in this case permits Progressive to require separate, segregated examinations under oath from Lidawi and Mohamad. Nevertheless, because this is a matter of first impression in Texas, in the interest of justice we reverse that part of the trial court's judgment dismissing appellants'

lawsuit for failure to comply with a condition precedent. We remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants Mohammad Lidawi and Zeina Mohamad, who are husband and wife, represent they are victims of an accident in which someone failed to stop at a stop sign, striking the left side of appellants' automobile as appellants passed through the intersection. According to appellants, the driver then drove away without providing any identifying information. Appellants filed a claim with their insurer, Progressive County Mutual Insurance Company, the appellee. Appellants' policy provides in part: "A person seeking any coverage must ... [c]ooperate with us in the investigation ... of any claim." The policy also provides, "A person seeking any coverage must ... [w]hen required by us ... submit to examination under oath."

On or after February 9, 2001, Progressive Claims Inspector David Tews took a recorded statement from Lidawi regarding the accident. Progressive also inspected appellants' automobile. This inspection revealed damage from multiple impacts involving several incidents. Additionally, the impacts left paint transfer marks that did not match Lidawi's description of the vehicle causing the accident. Based on the discrepancies between the physical damage and Lidawi's statement, Tews hired an engineer to investigate the damage. The engineer also concluded the damage was not consistent with Lidawi's statement.

On March 14, 2001, Tews sent letters to appellants and their attorney, Michael Engelhart, requesting appellants submit to an EUO. The letter did not refer to separate examinations. On April 11, 2001, Engelhart, appellants, and an interpreter met Tews and another Progressive representative at Engelhart's office. When Progressive insisted the EUOs be conducted separately, Engelhart insisted each appellant be permitted to be in the room when the other was examined because "they are husband and wife, and are both claimants and insured under the policy." Progressive refused, and Tews left without taking the examination.

On April 16, 2001, Tews sent Engelhart a letter formally requesting that appellants submit to individual and separate EUOs. Engelhart responded, indicating there was nothing in the insurance policy that required individual and separate examinations. Engelhart reiterated appellants' willingness to be examined so long as they could be in the same room while being questioned. On April 25, Tews wrote Engelhart and appellants stating Progressive was denying appellants' claim because of appellants' non-cooperation in the request for the EUO.

Appellants then sued Progressive for breach of contract and also sought a declaratory judgment regarding their rights and duties under the policy, specifically the duty of cooperation, the requirement of separate examinations, and the insurer's waiver of examination. Progressive counterclaimed for a declaratory judgment (1) that its request for separate examinations was consistent with the cooperation obligations of the contract, appellant's failure to cooperate constituted a breach of the policy, and Progressive therefore properly denied the claim; and (2) by failing to cooperate and refusing separate examinations, appellants failed to meet all conditions precedent to recovery on their suit.

Both parties moved for summary judgment. Appellants moved for traditional summary judgment on their claims and a partial no-evidence summary judgment on Progressive's request for declaratory judgment that appellants failed to satisfy a

condition precedent to the lawsuit. Progressive moved for traditional summary judgment. The trial court rendered judgment, ordering:

1. The Standard Texas Personal Auto Policy permits Progressive to require separate examinations under oath from Lidawi and Mohamad;

2. Since Lidawi and Mohamad failed to comply with Progressive's proper request for separate examinations, they have failed to comply with a condition precedent to recovery under their insurance policy with Progressive;

3. As a result, summary and declaratory judgment is hereby entered in favor of Progressive;

4. Plaintiffs' suit is hereby dismissed; and

5. Costs and attorney's fees are taxed against the incurring party.

## DISCUSSION

### Introduction and Standard of Review

■ Appellants raise two points of error. In point of error one, they contend they are entitled to summary judgment on their affirmative claims for breach of contract and declaratory judgment because, as a matter of law, the insurance policy does not entitle Progressive to separate, segregated EUOs. In point of error two, they contend they are entitled to summary judgment on their affirmative claim that Progressive waived its right to EUOs because they appeared, were ready, willing and able to proceed with the examination, and Progressive refused to proceed. For the same reasons, they argue they are "entitled to summary judgment and a no-evidence summary judgment" on Progressive's "defense" that all conditions precedent have not been met.[1]

■ When, as in this case, the parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, this court may consider the propriety of the denial as well as the grant. *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997)). If the issue raised is based on undisputed and unambiguous facts, we may determine the question presented as a matter of law. *Id.* at 724. We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Id.* (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988)). If, however, resolution of the issues rests on disputed facts, summary judgment is inappropriate, and we should reverse and remand for further proceed-

---

1. Failure to meet conditions precedent is not an "affirmative defense" on which Progressive bore the burden of proof. As the Dallas court explained regarding the burdens of pleading and proof:

A condition precedent to the right to maintain an action must be performed and "the fact of performance or excuse of nonperformance must be alleged and proved in order to warrant a recovery." *Southwestern Associated Telephone Co. v. City of Dalhart*, 254 S.W.2d 819, 825 (Tex.Civ.App.-Amarillo 1952, writ ref'd n.r.e.). When a plaintiff avers generally that all conditions precedent have been performed, he is required to prove the performance of only those conditions precedent specifically denied by the defendant. The effect of this rule is to shift the burden of pleading to the defendant, *but not the burden of proof,* when the plaintiff has made a general allegation that all conditions precedent have been performed.

*Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (emphasis added). Accordingly, appellants' "no evidence" motion for summary judgment was not appropriate in this regard.

ings. *Id.* at 724 (citing *Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex.1983)). We may also remand when the interests of justice so require. *See* Tex.R.App. P. 43.3(b); *N. County Mut. Ins. Co. v. Davalos*, 84 S.W.3d 314, 317 (Tex.App.-Corpus Christi 2002, pet. granted).

■■ The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Id.* at 549.

A defendant moving for traditional summary judgment assumes the burden of showing as a matter of law the plaintiff has no cause of action against him. *Levesque v. Wilkens*, 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Traditional summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

Additionally, after sufficient time for discovery has passed, a party may file a "no evidence" motion for summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). As with the traditional summary judgment, in reviewing a "no evidence" summary judgment, we review the evidence in the light most favorable to the nonmovant and disregard all evidence and inferences to the contrary. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We sustain a no evidence summary judgment if (1) there is a complete absence of proof of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.*

We review declaratory judgments under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997); *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Giles*, 902 S.W.2d at 170. Here, because the trial court resolved the case on competing motions for summary judgment in the face of undisputed facts, we review the propriety of the trial court's denial of the declaratory judgment under the same standards we apply to the summary judgment. *See Unauthorized Practice of Law Comm. v. Jansen*, 816 S.W.2d 813, 814 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (case submitted on agreed stipulation of facts and motion for summary judgment).

## Analysis of Points of Error

*Point of error one: Are appellants entitled to summary judgment on their affirmative claims for breach of contract and declaratory judgment because the insurance policy does not entitle Progressive to separate, segregated EUOs?*

■ In point of error one, appellants argue the insurance policy does not

entitle Progressive to conduct separate, segregated EUOs of the insureds. Insurance policies are controlled by rules of interpretation applicable to contracts generally. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). In construing the written contract, our primary concern is to ascertain the true intent of the parties as expressed in the contract. *Id.* When the written contract is so worded it may be given a definite or certain legal meaning, the contract is not ambiguous and parol evidence cannot be admitted to create an ambiguity. *Id.*

If, however, the language of a policy is subject to two or more reasonable interpretations, the language is ambiguous. *Id.* "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract." *Id.* A court may consider the parties' interpretations only when the court first determines the policy is ambiguous. *Id.* Only if a court decides a policy is ambiguous may the court construe its language in favor of providing coverage for the insured. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995).

Ambiguity in contract language, however, is not to be confused with silence. Ambiguity results when the intention of the parties is expressed in language susceptible of more than one meaning. *Med. Towers, Ltd. v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 822 (Tex.App.-Houston [14th Dist.] 1988, writ denied). In contrast, when a contract is silent, the question is not one of interpreting the language but rather one of determining its effect. *Id.*

Neither party seriously argues the policy is ambiguous. Appellants contend the policy is clear in not requiring separate examinations. They contend the policy is not silent because it contains a clause pertaining to examinations under oath. The policy provides: "*A person* seeking any coverage must ... [c]ooperate with us in the investigation ... of any claim." The policy also provides, "*A person* seeking any coverage must ... [w]hen required by us ... submit to examination under oath." (Emphasis added.) Use of the singular strongly suggests any examination of "a person" may proceed separately from that of any other person. Nevertheless, we conclude the policy is silent regarding the manner in which the EUO is to be conducted.

When a contract is silent on an issue, Texas courts will infer reasonable terms. *See Med. Towers*, 750 S.W.2d at 822–24 (concluding lease agreement silent as to method of appraisal required; and inferring comparable sales approach the proper method for determining value of property using accepted rules of construction).[2] Texas courts will also supply miss-

**2.** *See also Thompson v. CPN Partners, L.P.*, 23 S.W.3d 64, 72 (Tex.App.-Austin 2000, no pet.) (concluding security contract silent on issue of which areas of shopping center to be patrolled; and interpreting security contract as arranging for guards to patrol common areas of center, not inside leased premises); *Embrey v. Royal Indem. Co.*, 986 S.W.2d 729, 733 (Tex.App.-Dallas 1999) (concluding insurance policy supplementary payments provision silent on payment of prejudgment interest; and inferring provision did not require insurance company to pay such interest in excess of policy limits), *aff'd*, 22 S.W.3d 414 (Tex.2000); *Maxwell v. Lake*, 674 S.W.2d 795, 802–03 (Tex.App.-Dallas 1984, no writ) (concluding contract silent on method of exercising option; and therefore inferring option could be exercised by giving notice within option period and tendering performance within a reasonable time thereafter); *Price v. Horace Mann Life Ins. Co.*, 590 S.W.2d 644, 646 (Tex.Civ.App.-Amarillo 1979, no writ) (concluding contract silent regarding time within which insurer might require application for reinstatement; and inferring parties intended a reasonable time).

ing terms when necessary to effectuate the purposes of the parties under the agreement. *O'Farrill v. Gonzalez,* 974 S.W.2d 237, 244 (Tex. App.-San Antonio, 1998, pet. denied); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 204 cmt. d (1981). As a United States District Court has explained regarding insurance policies:

> [T]he court must tread carefully when ascribing implicit obligations on the contracting parties. The court should not venture beyond construing the contract to effectuate the manifest intentions of the parties. The court must determine what the parties bargained for when they agreed to the terms of the cooperation clause.
>
> The [insureds] bargained for the right to make an honest claim under the policy and to receive compensation with a minimum of inconvenience. In return, [the insurer] bargained for a reasonable means to ascertain the truth surrounding a claim. The cooperation clause embodies [the insurer's] right to uncover the probability of truth from the [insureds].
>
> The court must bear these interests in mind when construing the cooperation clause. Where the precise details of an agreement have not been defined by the parties, the court should assume the parties implicitly intended the agreement to operate in a reasonable manner. For example, courts routinely deem contracts to require performance within a reasonable time where the parties did not explicitly set any deadlines. The

cooperation clause, therefore, should be deemed to allow [the insurer] to take reasonable steps to ascertain the truth of the claims.

*State Farm Fire & Cas. Co. v. Tan,* 691 F.Supp. 1271, 1273 (S.D.Cal.1988) (citation omitted); *see also Shelter Ins. Cos. v. Spence,* 656 S.W.2d 36, 38 (Tenn.Ct.App. 1983) (viewing as relevant and material the obtaining of true and accurate information about the type and extent of damage to insured premises and its contents and observing the parties conceded determination of true facts is principal purpose of taking sworn statements).

Like the *Spence* court, we conclude "more accurate factual statements could likely be taken in any set of circumstances where multiple parties are involved, if such statements were taken separately." *Spence,* 656 S.W.2d at 38; *see also Tan,* 691 F.Supp. at 1273 (stating "[u]ndoubtedly, separate examinations would greatly enhance [the insurer's] ability to discover the true facts and to assess the veracity of the [insureds'] claims"). Accordingly, we infer a reasonable term permitting Progressive to require separate, segregated EOUs of its insureds.[3]

Appellants, however, cite this court to three cases in which courts from other jurisdictions have declined to infer such a provision: *United States Fid. & Guar. Co. v. Welch,* 854 F.2d 459 (11th Cir.1988); *Ahmadi v. Allstate Ins. Co.,* 22 P.3d 576 (Colo.Ct.App.2001); and *United States*

---

**3.** Regarding trial testimony, the Texas Supreme Court has observed, "Sequestration minimizes witnesses' tailoring their testimony in response to that of other witnesses and prevents collusion among witnesses testifying for the same side. The expediency of sequestration as a mechanism for preventing and detecting fabrication has been recognized for centuries." *Drilex Sys., Inc. v. Flores,* 1 S.W.3d 112, 116 (Tex.1999) (citations omit-

ted). In Texas, sequestration in civil litigation is governed by Texas Rule of Evidence 614 and Texas Rule of Civil Procedure 267. *Id.* Although parties who are natural persons and their spouses are specifically exempted from the sequestration rules, appellant has provided no principled reason why a spousal exemption should extend to the realm of investigation, and we discern none.

*Fid. & Guar. Co. v. Hill,* 722 S.W.2d 609 (Mo.Ct.App.1986). In *Welch,* the eleventh circuit considered a situation in which the insurer had obtained unsworn statements from the insureds, advised them it would later conduct an examination under oath, then insisted on examining each insured out of the presence of the other. *Welch,* 854 F.2d at 460. When they refused, the insurance company brought suit to compel separate examinations. *Id.* The district court applied the rule that insurance policies should be construed against the insurer and held the insurer was not entitled to separate examinations. *Id.* at 460–61. The eleventh circuit affirmed under a different rationale, applying Alabama's "strong public policy," which "supports the proposition that insurance companies should not be accorded *ex gratia* advantages which they did not insert in the policy when they easily could have done so." *Id.* at 460. Given that the policy also limited the examinations to what the company might "reasonably demand," the court stated it felt greater confidence affirming than it would have felt if the issue had arisen at the first questioning of the insureds. *Id.* Appellants do not identify a Texas public policy similar to Alabama's, and the issue in the present case did arise at the first attempted questioning.

*Ahmadi* shares many similarities with the present case. As in the present case, the insurance policy in question contained both a cooperation clause and a clause indicating the company "may also require any person making a claim to submit to questioning under oath and sign the transcript." *Ahmadi,* 22 P.3d at 577. After being forced off the road by an unidentified vehicle, the named insured and two claimants asserted claims under the policy for personal injury and uninsured motorist benefits. *Id.* The insurer requested the claimants to submit to EUOs, but when the claimants appeared with counsel for the examination, the insurer demanded each claimant be examined separately outside the presence of the others, and the claimants objected. *Id.* at 577–78.

The insurer refused, the examinations were not conducted, and the insurer denied the claims because the claimants had refused to submit to the EUOs and had not cooperated in the investigation. *Id.* at 578. The claimants filed suit seeking an award of benefits under the policy and a declaration (1) the insurer was without legal justification in requiring separate examinations and (2) denial of their claims was unreasonable. *Id.* Both parties filed motions for summary judgment, and the trial court granted the insurer's motion and dismissed the action. *Id.* The appellate court reversed, reasoning in part, "In the absence of any ambiguity, we must give effect to the plain meaning of the policy terms. Further, we are not at liberty to rewrite the policy." *Id.* (citations omitted).

The rationale behind the claimants' objection to segregated EUOs, however, differed from that in the present case, in which counsel simply stated the claimants were husband and wife. In contrast, the claimants' counsel in *Ahmadi* stated he did not speak the claimants' native language and therefore needed their assistance even though the insurer had arranged for an interpreter. *Id.* Moreover, the *Ahmadi* court made no reference to a court's ability to infer reasonable terms when the policy is silent regarding a particular matter.

Finally, in *Hill,* a divided court of appeals observed the insurer was not asking the court to construe any provision, but was asking the court to write additional terms into the policy. *Hill,* 722 S.W.2d at 611. The authoring judge declined to do so, stating, "It is beyond argument that if the language of an insurance policy is clear

and unambiguous then a court does not have the power to rewrite the policy, but must construe it as written." *Id.* A second judge concurred without opinion; the third dissented. *Id.* Like the *Ahmadi* court, the authoring judge in *Hill* made no reference to a court's ability to infer reasonable terms when the policy is silent regarding a particular matter.[4]

We conclude the better rationale is to be found in *Spence* and *Tan.* In the face of silence regarding the manner in which an insurer is to conduct an EUO, we infer a reasonable term allowing the insurer to require separate, segregated examinations.

We overrule appellant's point of error one. We affirm that part of the trial court's judgment declaring, "The Standard Texas Personal Auto Policy permits Progressive to require separate examinations under oath from Lidawi and Mohamad."

*Point of error two: (i) Are appellants entitled to summary judgment on their affirmative claim that Progressive waived its right to EUOs because they appeared, were ready, willing and able to proceed with the examination, and Progressive refused to proceed; and (ii) Are appellants entitled to summary judgment and a no-evidence summary judgment on Progressive's defense that all conditions precedent have not been met?*

■ ■ In point of error two, appellants argue (1) Progressive waived its

right to take *any* EUOs, and (2) the condition precedent of their submitting to an EUO has been met because they appeared ready, willing, and able to submit to an EUO, thereby substantially complying with the policy provisions regarding proof of loss. Appellants implicitly concede submission to an EUO was a condition precedent to recovery under the policy. Performance of any condition precedent is an essential element of a plaintiff's breach of contract case. *See Grimm v. Grimm,* 864 S.W.2d 160, 161 (Tex.App.-Houston [14th Dist.] 1993, no writ).[5]

Appellants' point of error two rests in part on their belief they "have fully complied with the proof of loss requirements." As we held under point of error one, Progressive can require separate, segregated EUOs. Appellants presented no evidence they complied with this requirement.

Nevertheless, appellants also contend, "Even without deciding the contract interpretation issue, Appellants' conduct in appearing for their examination under oath and in being ready willing and able to go forward is dispositive in this case." In short, they contend they have "substantially complied" with the policy provisions regarding proof of loss.

■ ■ Even without meeting all of the conditions of an EUO, an insured may substantially comply with the requirement, and the insurer may waive further compli-

---

4. The authoring judge opined:

> The only way this court could reach the result requested by [the insurer] would be to rewrite the policy and to add provisions which are not now there *nor which are contended to be contained by a reasonable construction of the language employed.* [The insurer] would have this court undertake a complete rewriting of the provisions providing for the examination under oath. That is beyond the power of the courts in this state.

*United States Fid. & Guar. Co. v. Hill,* 722 S.W.2d 609, 611 (Mo.Ct.App.1986) (emphasis added).

5. Insurance policy provisions requiring the insured's submission to an EUO as a condition precedent to sustaining a suit on the policy are valid. *State Farm Gen. Ins. Co. v. Lawlis,* 773 S.W.2d 948, 949 (Tex.App.-Beaumont 1989, no writ) (per curiam) (citing *Philadelphia Underwriters' Agency v. Driggers,* 111 Tex. 392, 238 S.W. 633 (1922)).

ance. *See Century Ins. Co. v. Hogan,* 135 S.W.2d 224, 228 (Tex.Civ.App.-Austin 1939, no writ). Appellants rely on *Hogan* to support their claims of waiver and substantial compliance. In *Hogan,* the insured had submitted to an EUO and had answered every question. *Id.* The insured's only noncompliance was his refusal to sign the notary's transcription, a refusal the appellate court found warranted because the notary had not recorded all the insured had testified to. *Id.* The appellate court also observed the unsigned transcription served every purpose it could have served if it had been signed. *Id.* Finally, in relation to the insurer's waiver of the signature, the appellate court observed, "The evidence obtained by [the insurer] on this examination was manifestly all it desired from [the insured], otherwise it would have directed attention to [the insured's] failure to sign the transcription in the reply of January 5, 1938, to the offer of December 16, 1937, by appellee's attorneys." *Id.*

■ In the present case, however, the insureds have not been examined under oath at all. Appellants point to no document in the present case equivalent to the notary's transcription in *Hogan.* Furthermore, Progressive made a formal request for such an examination even after appellants refused. In short, they "directed attention" to their need for the EUO. To conclude Progressive waived *any* EUO by insisting on a procedure to which we have held it was entitled would mean Progressive would have had no means of protecting what it correctly believed were its rights under the policy.

We overrule appellants' point of error two to the extent appellants argue they are entitled to summary judgment on their affirmative claim Progressive waived its right to any examinations under oath.

■ Nevertheless, we also decline to conclude Progressive is presently entitled to summary judgment in its favor and dismissal of appellants' lawsuit.[6] Depending on how the policy is written, an insurer's proper remedy to enforce a condition precedent is abatement rather than barring the claim. *See State Farm Gen. Ins. Co. v. Lawlis,* 773 S.W.2d 948, 949 (Tex. App.-Beaumont 1989, no writ) (per curiam) (citing *Humphrey v. Nat'l Fire Ins. Co.,* 231 S.W. 750 (Tex.Com.App.1921)). Furthermore, like Progressive, appellants had no means, other than insisting on their position, of protecting what they believed, based on case law from outside Texas, to be their rights under the policy. The summary judgment proof does not contain any parts of the policy dealing with the ramifications of non-compliance with the cooperation and examination clauses, particularly under circumstances such as those presented here. Accordingly, we reverse that part of the judgment granting final summary judgment in favor of Progressive and dismissing appellants' lawsuit for the reason they failed to comply with a condition precedent.

■ In addition, because we are today deciding an issue of first impression, the case has not been fully developed consistent with that law. *See Bayway Servs., Inc. v. Ameri–Build Constr., L.C.,* 106 S.W.3d 156, 161 (Tex.App.-Houston [1st Dist.] no pet.) (stating, "As long as there is a probability that a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision"). Accordingly, we remand to the trial court to afford appellants the opportunity of complying with

6. In the caption for their point of error one, appellants argue the trial court should not have granted summary judgment in favor of Progressive.

the requirement of separate, segregated EUOs as a condition precedent to their lawsuit. *See* TEX.R.APP. P. 43.3(b).

## CONCLUSION

We affirm that part of the trial court's judgment declaring, "The Standard Texas Personal Auto Policy permits Progressive to require separate examinations under oath from Lidawi and Mohamad." We reverse that part of the judgment granting final summary judgment in favor of Progressive and dismissing appellants' lawsuit. Finally, we remand this cause to the trial court to afford appellants the opportunity to comply with the requirement of separate, segregated EUOs as a condition precedent to their lawsuit.