02-09-340 & 446-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00320-CV

 

 


 
 
 Terry McBride
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 John James
 
 
  
 
 
 APPELLEE
 
 


 

NO.  02-09-00446-CV

 

 


 
 
 TERRY
 MCBRIDE
 
 
  
 
 
 APPELLANTS
 
 
 
 
 AND
 RICHARD GUEST
 V.
  
 
 
 
 
 JOHN
 JAMES
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 78th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          In
this consolidated appeal,[2]
Appellants Terry McBride and Richard Guest independently appeal from the trial
court’s orders in this dispute over the proceeds from the sale of an oil rig
and related equipment (the Rig).  We affirm.

II. 
Factual and Procedural History

          In
2005, in a prior action in Parker County, McBride sued Lee C. “Skip” Potts,
seeking payment on the promissory note Potts signed related to the purchase of
the Rig (the Parker County Lawsuit).  Potts was Appellee John James’s business
partner and coshareholder in the closely held corporation Black Jack
Exploration, Inc., an oil exploration and drilling services firm.  McBride’s
petition in the Parker County Lawsuit stated that on June 14, 2005, Potts (borrower)
signed a promissory note agreeing to pay McBride (lender) $215,000 plus
interest.  McBride’s petition alleged breach of contract and included a claim
based on a sworn account.  McBride sought not only judgment on the debt Potts
owed but also a “Judgment for Foreclosure of Plaintiff’s security interest in
the . . . [R]ig and its equipment . . . [and] issuance of an Order for Sale on
the collateral as provided by law.”  The McBride-Potts promissory note lists
the Rig as security interest and McBride as the secured party.

          After
Potts answered with a general denial, McBride invoked rule of civil procedure
185 and moved for a no-evidence summary judgment based solely on his
sworn-account claim.  In his petition, McBride stated that Potts had “signed
and issued to [McBride] a Promissory Note dated July 14, 2005, whereby [Potts]
promised to pay to the order of [McBride] the principle sum of $215,000, with
interest . . . [] for drilling rights and drilling equipment.” [Emphasis
added.]  McBride also stated that his “claim is based upon and pled as a sworn
account.”  After a hearing, the Parker County trial court granted McBride
summary judgment and awarded him $215,000 plus interest.

          In
July 2006, James, individually and derivatively as Black Jack’s shareholder,
brought suit against McBride, Guest, and others[3]
for damages and injunctive relief claiming that because Black Jack and not
Potts had purchased the Rig, Black Jack was entitled to the proceeds from the
Rig’s sale (the McBride-James Lawsuit).

A. 
Mediated Settlement Agreement

          In
the McBride-James Lawsuit, in late November 2007, Guest filed a Motion to Put
(the) Rig to Work.  At the hearing on Guest’s motion, a rule 11 agreement was
read into the record wherein the parties granted Guest possession of the Rig to
put it into operation or to lease it out with the proceeds remitted to a
receiver pending the litigation’s outcome.  On November 30, 2007, the trial
court issued an order approving the parties’ rule 11 agreement.  On January 23,
2008, the parties reached a mediated settlement agreement wherein they agreed
to sell the drilling equipment for $600,000 and “to cooperate in efforts to
sell the [R]ig.”

          On
March 4, 2008, Guest, relying on the parties’ mediated settlement agreement,
filed a motion to dismiss James’s claims.  A day later, James filed a motion
seeking sanctions and asking the trial court to declare the settlement
agreement “null and void,” claiming that Guest’s failure to provide the Rig’s
location and his evasiveness had caused the parties to lose a $600,000 sales
opportunity.  At the April 16, 2008 hearing on James’s motion, after hearing
testimony that Guest had not put the Rig into operation, had failed to disclose
the Rig’s location, and did not respond to telephone calls, and that James’s
independent efforts to locate the Rig had failed, the trial court terminated
the settlement agreement.  After terminating the parties’ agreement, the trial
court ordered the Rig sold and the proceeds deposited in the court registry.  On
May 13, 2008, Guest filed objections to the trial court’s April 18, 2008 order.
 Guest filed a motion to reinstate the settlement agreement, and requested a
jury trial to enforce the agreement.  After a hearing, the trial court denied
Guest’s motion.  Neither order contains provisions to sever the rulings from
cause number 164,684-B.

B. 
James’s Partial Summary Judgment

          In
May 2009, James, relying on the position McBride had taken in the Parker County
Lawsuit relative to the Rig—that of secured creditor—successfully moved for
partial summary judgment on the Rig’s ownership.  In
his response to James’s motion for partial summary judgment, McBride indicated
that the “central issue . . . [] is the ownership of [the] . . . [R]ig
Defendant McBride sold to Defendant Potts.” [Emphasis added.]  The
response also indicated that at the time the trial court rendered its decision
in the Parker County Lawsuit, “McBride had already peacefully repossessed the
[R]ig.”  In closing his response McBride stated that he “claims he purchased
the . . . [R]ig and allowed Defendant Potts to use said [R]ig and loaned him
$215,000 to purchase drilling rights and maintain the [R]ig.”

          McBride’s
response includes excerpts from Potts’s, McBrides’s and James’s depositions
taken in the McBride-James Lawsuit.  Both James and Potts stated that they
purchased the Rig from a third-party, Ronnie Cubine, and that they paid Cubine
with cash and a cashier’s check.  James averred that McBride provided the funds
Black Jack used to purchase the Rig (a check made out to Black Jack), that the
check was advance payment for wells Black Jack contracted to drill for McBride,
and that Black Jack did drill two wells for McBride.  Potts indicated that
McBride furnished the money for the Rig with the “full intention that [it] was
[McBride’s] equipment,” but also noted that when he picked up the check,
McBride requested that Potts sign a promissory note.

          McBride
averred that he was not aware of Black Jack until after the company began
drilling, that he bought a Rig that Potts took to drill wells with, that Potts
was supposed to pay him back, that he personally did not pay Cubine, that he
financed the purchase of the Rig for Potts, that he (McBride) owned the Rig,
and that once Potts paid McBride for the Rig, Potts would obtain title to it.  McBride
agreed that the promissory note is the transaction’s only documentation.  McBride
also admitted that after he peaceably foreclosed and took possession of the
Rig, he still pursued the Parker County Lawsuit against Potts—ultimately ending
up with both possession of the Rig and judgment against Potts for $215,000.  McBride
indicated that he sold the Rig to Guest but that Guest had not yet paid him
anything for the Rig.

          On
July 2, 2009, without conducting a hearing, the trial court granted James’s
motion for partial summary judgment in the McBride-James Lawsuit.  In its
order, the trial court concluded that:

1.    Defendant Terry
McBride’s prior judicial admissions bar Defendant McBride from claiming he
purchased the . . . [R]ig;

 

2.    A judgment entered in
Cause No. CV06-1218, styled Terry McBride v. Skip Potts, pending in the
415[th] District Court of Parker County, Texas bars Defendant Terry McBride
from claiming through any security interest in the . . . [R]ig; [and]

 

3.    Defendant Guest has
no right to recover funds deposited in the registry of the Court.

 

          The
trial court then severed this ruling from James’s remaining causes of action
into cause number 164,684-B-1.  On September 17, 2009, McBride filed notice of
his intent to appeal the severed summary judgment.  On November 12, 2009, the
trial court granted a declaratory judgment, awarded Black Jack the proceeds of
the sale in the court registry, and severed the declaratory judgment into cause
number 164,684-B-1, the same cause number as its ruling on the partial summary
judgment.  McBride’s and Guest’s appeals followed.

III. 
Mediated Settlement Agreement

          Guest
asserts two independent issues, alleging that the trial court erred by
terminating, and then failing to reinstate, the mediated settlement agreement,
actions the trial court took prior to granting the summary judgment.  However,
there does not appear to be a final, appealable judgment or order as to these
issues, as the trial court did not sever these rulings out, and they remain in
the parent cause of action, cause number 164,684-B.  Therefore, we dismiss
these issues for want of jurisdiction.  See Tex. R. App. P. 43.2(f).

IV. 
Summary Judgment

          In
two issues, McBride argues that the trial court erred by granting James’s
motion for summary judgment and by issuing a declaratory judgment awarding the
proceeds from the sale of the Rig to Black Jack based on the summary judgment.  Guest
adopts McBride’s issues.

A. 
Standard of Review

          In a
summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  Mann
Frankfort, 289 S.W.3d at 848; Kaufman v. Islamic Soc’y of Arlington,
291 S.W.3d 130, 143–44 (Tex. App.—Fort Worth 2009, pet. denied).

          We
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant=s
favor.  20801, Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  We consider the
evidence presented in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could, and
disregarding evidence contrary to the nonmovant unless reasonable jurors could
not.  Mann Frankfort, 289 S.W.3d at 848.  We must consider whether
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the evidence presented.  See Wal-Mart Stores, Inc. v. Spates, 186
S.W.3d 566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802,
822–24 (Tex. 2005).

          The
summary judgment will be affirmed only if the record establishes that the
movant has conclusively proved all essential elements of the movant=s
cause of action or defense as a matter of law.  City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).

B. 
Applicable Law

          Judicial
estoppel precludes a party who successfully maintains a position in one
proceeding from later adopting a clearly inconsistent position in another
proceeding to obtain an unfair advantage.  Ferguson v. Bldg. Materials Corp.
of Am., 295 S.W.3d 642, 643 (Tex. 2009) (citing Pleasant Glade Assembly
of God v. Schubert, 264 S.W.3d 1, 6 (Tex. 2008)).  The doctrine is not
intended to punish inadvertent omissions or inconsistencies but rather to
prevent parties from playing fast and loose with the judicial system for their
own benefit.  Id. (citing Schubert, 264 S.W.3d at 7).  The
elements of judicial estoppel are (1) a sworn, prior inconsistent statement
made in a prior judicial proceeding; (2) the successful maintenance of the contrary
position in the prior action; (3) the absence of inadvertence, mistake, fraud,
or duress in the making of the prior statement; and (4) the statement was
deliberate, clear, and unequivocal.  DeWoody v. Rippley, 951 S.W.2d 935,
944 (Tex. App.—Fort Worth 1997, writ dism’d by agr.).

          A
claim based on a sworn account is brought pursuant to Texas Rule of Civil
Procedure 185.  Tex. R. Civ. P. 185.  Rule 185 is a procedural tool that limits
the evidence necessary to establish a prima facie right to recovery on certain
types of accounts.  Id.  Rule 185 applies only “to transactions between
persons, in which there is a sale upon one side and a purchase upon the
other, whereby title to personal property passes from one to the other, and
the relation of debtor and creditor is thereby created by general course of
dealing . . . .”  Bird v. First Deposit Nat’l Bank, 994 S.W.2d 280, 282
(Tex. App.—El Paso 1999, pet. denied); see also Hou-Tex Printers, Inc. v.
Marbach, 862 S.W.2d 188, 190 (Tex. App.—Houston [14th Dist.] 1993, no
writ).

C. 
Analysis

          The
record shows that in his 2005 Parker County Lawsuit against Potts, McBride
filed a petition claiming breach of contract and invoking rule 185 on a sworn
account claiming a security interest in the drilling equipment; that
after Potts answered with a general denial, McBride invoked rule 185 in his
motion for no-evidence summary judgment based solely on his sworn account
claim; that the trial court granted McBride summary judgment and awarded him
$215,000 plus interest; that there is no evidence that McBride’s pleading
resulted from inadvertence, mistake, fraud, or duress; and that McBride made
deliberate, clear, and unequivocal statements in his summary judgment
pleading.  McBride’s motion for summary judgment was his final pleading, and
the trial court settled the case on the basis of that pleading; therefore, even
viewing the evidence favorably to McBride, he is estopped from now claiming
that he holds an ownership interest, a position adverse to the
security-interest-holder position he successfully took in his motion for
summary judgment in the Parker County Lawsuit based on the same facts and
concerning the same piece of property—the Rig.  See Dickson v. Stockman,
411 S.W.2d 610, 614 (Tex. App.—Fort Worth 1966, writ ref’d n.r.e.) (affirming
judicial estoppel against appellant pleading claims contradicting those made in
prior successful summary judgment action); Wall v. Young Cnty. Lumber Co.,
368 S.W.2d 789, 792 (Tex. App.—Fort Worth 1963, no writ.) (concluding that
appellant “necessarily” taking a positive position of creditor in prior sworn
account action seeking repayment of advanced funds was “judicially estopped” in
later action from asserting title to the advanced funds or title to the land
purchased with the funds); see also Comerica Acceptance Corp. v. Dallas
Cent. Appraisal Dist., 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet.
denied) (indicating that common definition of term “owner” does not include
person in possession of personal property collateral for purpose of selling it
pursuant to a security agreement); Borg-Warner Acceptance Corp. v. Massey-Ferguson,
Inc., 713 S.W.2d 351, 354 (Tex. App.—Dallas 1985, writ ref’d n.r.e.) (op.
on reh’g) (noting that it is well settled in Texas law that an owner cannot
have a lien on his own property because they are inconsistent interests); cf.
Williams v. Unifund CCR Partners Assignee of Citibank, 264 S.W.3d 231, 234
(Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that passage of title is
required to invoke procedural rule on sworn account).

          Therefore,
we conclude that the trial court did not err by granting James partial summary
judgment, and we overrule McBride’s first issue.

          In
his second issue, McBride challenges the trial court’s declaratory judgment
awarding the proceeds of the sale to Black Jack.

          We
review declaratory judgments under the same standards as other judgments and
decrees. Lidawi v. Progressive County Mut. Ins. Co., 112 S.W.3d 725, 730
(Tex. App.—Houston [14th Dist.] 2003, no pet.).  We look to the procedure used
to resolve the issue at trial to determine the standard of review on appeal.  Id. 
Generally, declaratory judgments decided by summary judgment are reviewed under
the same standards of review that govern summary judgments.  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2009); Lidwai, 112
S.W.3d at 730.

          McBride
and Guest’s only argument on appeal is that because “the summary judgment is in
error . . . the declaratory judgment is also in error.”  The trial court
granted the declaratory judgment as a matter of law based on the summary
judgment, which we have already upheld.  Therefore, based on our resolution of
his first issue, we overrule McBride’s second issue as well.  See Tex.
R. App. P. 47.1.

V. 
Conclusion

          Having
overruled all of McBride’s issues, we affirm the trial court’s judgment as to
McBride.  We dismiss for want of jurisdiction Guest’s two mediated settlement
agreement issues and affirm the trial court’s judgment as to Guest on the two
issues he adopted from McBride.

 

 

BOB MCCOY
JUSTICE

 

PANEL: 
WALKER,
MCCOY, and GABRIEL, JJ.

 

WALKER
and GABRIEL, JJ. concur without opinion.

 

DELIVERED:  March 24, 2011









[1]See Tex. R. App. P. 47.4.





[2]McBride appeals the trial
court’s grant of summary judgment, which was severed from trial court cause
number 164,684-B into number 164,684-B-1.  Guest and McBride appeal the trial
court’s grant of declaratory judgment (also severed into 164,684-B-1).  Guest
also appeals the trial court’s termination and failure to reinstate the
parties’ mediated settlement agreement, which was retained in cause number
164,684-B.  The parties’ appeals were consolidated on review.





[3]The other parties were
nonsuited at various times in the proceedings.