**Opinion issued April 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-22-00720-CV

———————————————

**CG RANCH SERVICES, LLC, Appellant**

**V.**

**SCHLUMBERGER TECHNOLOGY CORPORATION, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-26175**

---

## MEMORANDUM OPINION

This case arises from a contract dispute. CG Ranch Services, LLC sued Schlumberger Technology Corporation for breach of contract and fraud. The trial court granted Schlumberger's motions for summary judgment and ordered that CG Ranch take nothing on its claims, and CG Ranch appealed. In four issues, CG Ranch

argues that the trial court erred in granting Schlumberger's motions for summary judgment and in sustaining Schlumberger's objections to CG Ranch's summary judgment evidence.

We affirm.

## Background

CG Ranch and Schlumberger entered into an Agreement for Rental Equipment and Services, dated July 11, 2019, ("Agreement"), whereby Schlumberger would lease hunting equipment from CG Ranch. The Agreement consists of several parts that "shall be read as one document," including the Form of Agreement and Exhibits A–I. The Agreement provides that it was to be "an umbrella agreement which sets the terms and conditions under which Schlumberger may . . . rent Units . . . from [CG Ranch] and/or purchase associated services."

Under Exhibit A to the Agreement, the General Terms and Conditions for Rental Equipment and Services, Schlumberger was required to submit a purchase order describing the type, quantity, price, and required date of delivery of the rental equipment or products or the performance of services.

On August 1, 2019, Schlumberger and CG Ranch entered into a service order, under which Schlumberger leased various hunting equipment from CG Ranch for Schlumberger's use on its King Ranch property for a 54-month term, beginning on

September 1, 2019. A month later, the parties amended the service order to, among other things, extend the lease period for an additional year, through March 31, 2024.[1]

By letter dated March 31, 2020, Schlumberger informed CG Ranch that it was terminating the Agreement pursuant to Article 9.1(f) of the Agreement:

> Please allow this correspondence to serve as thirty days' written notice of the cancellation of the Agreement pursuant to Section 9.1(f) of the Agreement. Such cancellation shall become effective April 30, 2020. Pursuant to Section 9.2(b) of the Agreement, the Service Order shall terminate concurrently.

> As per Section 9.5(b) Schlumberger shall pay rental on the equipment/units until the termination date. Additionally, Schlumberger will have the equipment listed in Exhibit 1 of the Service Order that is not currently in CG Ranch Services' possession ready to be returned to CG Ranch Services on April 30, 2020. Please confirm receipt of this correspondence and advise of plans to retrieve the equipment.

CG Ranch sued Schlumberger, alleging that Schlumberger's termination breached the Agreement. Schlumberger moved for traditional summary judgment on CG Ranch's breach-of-contract claim, arguing that its termination was expressly authorized by the Agreement. CG Ranch filed a response and amended its petition to include a claim for fraud and a second breach-of-contract claim based on Schlumberger's alleged misuse and abuse of the rental equipment. The trial court granted partial summary judgment in favor of Schlumberger on CG Ranch's claim of breach of contract by termination.

---

[1] We refer to the August 1, 2019 service order and its September 9, 2019 amendment collectively as the Amended Service Order.

The trial court entered a docket control order on CG Ranch's new claims and set the deadline to designate expert witnesses for April 10, 2022. CG Ranch did not designate any experts.

Shortly before the close of discovery, Schlumberger moved for no evidence summary judgment on CG Ranch's remaining breach of contract and fraud claims. In a separate motion filed the same day, Schlumberger also moved for traditional summary judgment on CG Ranch's fraud claim.

CG Ranch filed a combined response to both summary judgment motions and attached as evidence the affidavit of Robert Woodcock. Schlumberger objected to the Woodcock affidavit, arguing that it was conclusory, and that CG Ranch failed to timely designate Woodcock as an expert. The trial court sustained Schlumberger's objections to the Woodcock affidavit and granted Schlumberger's no evidence and traditional motions for summary judgment. CG Ranch now appeals from the trial court's final summary judgment.

## Summary Judgment

In four issues, CG Ranch argues that the trial court erred in granting summary judgment in favor of Schlumberger on its breach of contract and fraud claims, and in sustaining Schlumberger's objections to the Woodcock affidavit.

## A. Standard of Review

We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). To determine whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49.

To prevail on a no evidence motion for summary judgment, the movant must demonstrate that there is no evidence to support an essential element of the non-movant's claim on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present some probative evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

"The trial court must grant the [no evidence] motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 376

(Tex. App.—Houston [1st Dist.] 2012, pet. denied). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the summary judgment if any of the theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

When a party moves for both a traditional and no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standard of review. *Ford Motor*, 135 S.W.3d at 600. If the trial court properly granted the no evidence motion, we do not consider the arguments raised regarding the traditional summary-judgment motion. *Id.*

## B.    Breach of Contract by Termination

In its first issue, CG Ranch argues that the trial court erred in granting Schlumberger's partial traditional motion for summary judgment on its claim for

6

breach of contract by termination.[2]  According to CG Ranch, the termination provisions in the Agreement and the Amended Service Order contain a latent ambiguity that create a fact issue and should have prevented the trial court from granting summary judgment as a matter of law.

### 1. Contract Interpretation Principles

Absent ambiguity, contracts are construed as a matter of law. *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014).  In construing a written contract, our primary objective is to ascertain the parties' true intentions as expressed in the language they chose. *Id.*  "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).  A court may "consider the parties' interpretation of the contract and admit extrinsic evidence to determine the true meaning of its terms only after the court has determined that the contract is ambiguous." *Id.* at 450–51 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)).

---

[2]  "When a trial court renders a final judgment, the court's interlocutory orders merge into that judgment and may be challenged by appealing the final judgment." *Bonsmara Nat. Beef Co., LLC v. Hart of Tex.*, 603 S.W.3d 385, 390 (Tex. 2020).

7

A contract is not ambiguous if the contract's language can be given a certain or definite meaning. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). When the controversy can be resolved by proper construction of an unambiguous document, rendition of summary judgment is appropriate. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000).

"On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).  A contract is not ambiguous merely because the parties disagree about its meaning. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018).

A "latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter, such as the circumstances present when the contract was entered." *Id.*  But "the ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." *Id.*

8

## 2. Analysis

CG Ranch alleged that Schlumberger materially breached the terms of the Agreement when it terminated and "failed to pay [] under the terms of the Agreements." Schlumberger moved for summary judgment arguing that its termination was unambiguously authorized by the Agreement, specifically Article 9.1(f), therefore there was no breach, and it was entitled to summary judgment as a matter of law. To resolve this question, we turn to the language of the Agreement.

Exhibit A to the Agreement contains an "order of precedence," stating that the various parts of the Agreement

> shall be read as one document, the contents of which, in the event of conflict or inconsistency, shall be given precedence in the following order listed in declining weight: (i) the Form of Agreement, (ii) Exhibit B, (iii) Exhibit A, and (iv) all other exhibits in the Form of Agreement in declining weight.

Exhibit B to the Agreement is the Special Terms and Conditions for Rental Equipment and Services, and Exhibit A to the Agreement is the General Terms and Conditions for Rental Equipment and Services. Included in the "other exhibits in the Form of Agreement" is Exhibit I, which is the Form of Service Order. Exhibit I is representative of the Amended Service Order at issue in this case.

Accordingly, to the extent there are conflicts between the provisions of the various documents, the Form of Agreement controls, followed by the Special Terms

9

and Conditions, then the General Terms and Conditions, and so on, through the document of least weight, i.e., the service order.

As relevant to CG Ranch's claim for breach of contract by termination, Article 9 of Exhibit A relates to termination and suspension. Article 9 lists the ways in which the entire Agreement may be terminated—Article 9.1—and the ways in which an individual service order may be canceled or terminated—Article 9.3.

With respect to the termination of the *Agreement* as a whole, Article 9.1(f) provides: "without prejudice to Article 9.2 Schlumberger may terminate the Agreement, in whole or in part, at its convenience by serving thirty (30) day prior written notice to [CG Ranch]." Article 9.2 then requires that if, at the time of termination of the Agreement, any order is being performed, said order shall either be completed or terminated concurrently with the Agreement.

If the termination of the Agreement occurs pursuant to Article 9.1(f), Article 9.2 provides that "the provisions of Article 9.5 shall apply." Article 9.5 states: "If an Order is cancelled/terminated pursuant to Article 9.3(d) or as a result of the Agreement being terminated pursuant to Article 9.1(f) [and] . . . if the Order is terminated after shipment/delivery . . . [CG Ranch] shall be paid for the [equipment] . . . up to the date of termination, *unless otherwise agreed to in the Order*." (Emphasis added).

10

The Agreement also provides for termination or cancelation of an individual order, as opposed to the entire agreement. That article—specifically, Article 9.3(d)—allows Schlumberger to "cancel/terminate for convenience, in whole or in part, an Order pursuant to the Agreement at any time after acceptance by [CG Ranch], and the provisions of Article 9.5 shall apply."

Thus, under the terms of the Agreement, Schlumberger had the ability to terminate at its convenience either: (1) the entire Agreement under Article 9.1(f), or (2) an individual service order under Article 9.3(d). Upon such termination for convenience, Schlumberger would be required to pay CG Ranch (per Article 9.5) the rental payments up to the date of termination, unless otherwise agreed to in the order.

Here, through its March 31, 2020 letter, Schlumberger chose to terminate the entire Agreement pursuant to Article 9.1(f)—not just the Amended Service Order. Because it terminated the entire Agreement under Article 9.1(f), Article 9.2 dictates that any pending service order, which would include the Amended Service Order, would terminate concurrently with the Agreement. And because termination occurred after delivery of the rental equipment, Schlumberger was required to pay CG Ranch the rental fees through the date of termination under Article 9.5, *unless otherwise agreed to in the Order*.

11

It is this language—unless otherwise agreed to in the Order—that CG Ranch argues directs us to Section 6.3 of the Amended Service Order and required Schlumberger to pay the remaining balance of the lease payments, not just the payments through the date of termination. We disagree.

Section 6.3 of the Amended Service Order provides:

> In the event of *termination of this Order* by Schlumberger pursuant to *Article 9.3(a) or (d)* of the Agreement, Schlumberger shall pay a termination fee to [CG Ranch] based on the following criteria . . . [l]ess than 12 months after Oct 1st, 2019, the unpaid balance of the lease payments under the Order[.]

(Emphasis added). Under the plain language of Section 6.3, this section applies only if Schlumberger elects to terminate *the individual order* under either Article 9.3(a) or (d). It does not apply when termination of the Agreement as a whole occurs under Article 9.1, or when termination of an individual order is triggered under Article 9.2 by virtue of the termination under Article 9.1. Here, Schlumberger did not terminate the individual order pursuant to Article 9.3(a) or (d) of the Agreement, but rather terminated the entire Agreement pursuant to Article 9.1(f). By its plain and unambiguous terms, Section 6.3 does not apply.

We also disagree that Section 6.3's language creates a latent ambiguity. According to CG Ranch, the application of the termination provisions creates a latent ambiguity because termination pursuant to Article 9.1(f) and Article 9.3(d), both of

12

which allow termination due to convenience with 30 days' notice, "is a distinction without a difference."

To the contrary, there is a great distinction. While both provisions allow Schlumberger to terminate *something* at its convenience, only one provision—Article 9.1(f)—allows Schlumberger to terminate the entire Agreement, including any pending orders, thus terminating the entire contractual relationship between the parties.

The other provision—Article 9.3(d)—allows Schlumberger to terminate an individual order, while keeping the overarching "umbrella" Agreement between the parties in place and allowing for future service orders to be entered into between the parties. This reading of the termination clauses does not render Section 6.3 of the Amended Service Order meaningless, nor does it create a latent ambiguity. Because the documents at issue in this dispute can be given a certain or definite meaning, we conclude that they are not ambiguous. *See El Paso Field Servs.*, 389 S.W.3d at 806.

The Agreement between the parties clearly contemplated that Schlumberger would have the option and ability to terminate individual orders, without terminating the entire Agreement, or to terminate the entire Agreement and, concurrently therewith, any orders in progress. While Section 6.3 of the Amended Service Order does require Schlumberger to make graduated payments in the event of an early

13

termination of the Amended Service Order, if that termination occurred under either Article 9.3(a) or (d), that is not what happened here.

Instead, Schlumberger elected to terminate the entire Agreement under Article 9.1(f), provided the 30 days' written notice required by the Agreement, and indisputably paid the lease payments due through the date of termination as required by Article 9.5. Interpreting the unambiguous language of the Agreement, we hold that Schlumberger did not breach the Agreement by terminating and that the trial court properly granted partial summary judgment in favor of Schlumberger on this breach of contract claim. *See Lopez*, 22 S.W.3d at 862.

We overrule CG Ranch's first issue.

## C. Breach of Contract for Misuse or Abuse of Equipment

With respect to CG Ranch's claim for breach of contract based on the misuse or abuse of equipment, CG Ranch argues that Schlumberger's no evidence motion for summary judgment should have been denied because Schlumberger damaged the rental equipment beyond normal wear and tear and caused CG Ranch to suffer damages in excess of $180,000. In connection with this argument, CG Ranch also argues that the trial court erred in sustaining Schlumberger's objections to CG Ranch's summary judgment evidence, i.e., the Woodcock affidavit.

In response, Schlumberger argues that we must affirm because CG Ranch failed to challenge each independent ground for summary judgment on this claim. Because Schlumberger's argument is dispositive, we address it first.

An appellate court may not reverse a trial court's judgment without properly assigned error. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226–27 (Tex. 2022. When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based. *Id.*; *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet).

A party may negate each ground by raising separate issues or asserting a general issue that the trial court erred in granting summary judgment, and within that issue providing argument negating all possible grounds upon which summary judgment could have been granted. *Rosetta Res. Operating*, 645 S.W.3d at 227.[3]

A general statement that "the trial court erred by granting [the movant's] motion for summary judgment" may be sufficient to allow argument on all possible grounds that the summary judgment motion was granted, but if a party does not brief those arguments, the court cannot properly reverse summary judgment on those

---

[3] *See also Tweedell v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 1 S.W.3d 304, 309 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.) (affirming trial court's summary judgment on grounds not challenged "(1) by a separate [issue] or (2) by argument and citation to authority under" broader issue).

15

grounds. *Id.*; *see also* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.).[4]

Applying these principles here, we examine the grounds on which Schlumberger moved for summary judgment, and whether CG Ranch has attacked each of those grounds in its briefing here.

Schlumberger moved for no evidence summary judgment on three specific grounds with respect to CG Ranch's breach of contract for misuse or abuse of equipment: (1) there is no evidence that Schlumberger breached the Rental Agreement because there is no evidence that Schlumberger damaged any of the leased equipment beyond fair wear and tear and depreciation, (2) there is no evidence that CG Ranch sustained damages due to any alleged breach, and (3) there is no

---

4    *See also Jack v. Holiday World of Hous.*, 262 S.W.3d 42, 49–50 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then (1) we must accept the validity of that unchallenged independent ground … and thus (2) any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment.").

16

evidence that CG Ranch satisfied the condition precedent required to recover damages under the Agreement.

With respect to the third argument, Schlumberger argued that Article 8.4(b) of the Agreement provided CG Ranch with two options if its equipment was not returned "at the same conditions they were rented out, fair wear and tear and depreciation excluded."

CG Ranch could either (1) declare the equipment a total loss if it is incapable of economic repair; or (2) make the repairs that are necessary to put the equipment "into the same good order and repair as such [equipment] was at the beginning of the rental period, fair wear and tear and depreciation excluded." Once CG Ranch made that election, Schlumberger argued that Article 8.4(c) permits CG Ranch to recover from Schlumberger "all costs incurred with regard to the repair and restoration of the lost or damaged [equipment]."

Because CG Ranch seeks to recover the cost to repair the equipment, Schlumberger argued that, as a condition precedent to recovering these costs, CG Ranch needed to actually perform the repairs. Schlumberger contended CG Ranch has no evidence that it performed the repairs, only that it received estimates for the repairs, and therefore CG Ranch failed to comply with the condition precedent to recovery, and Schlumberger was entitled to summary judgment. Without identifying

17

the specific grounds, the trial court granted summary judgment for Schlumberger on this breach-of-contract claim.

On appeal, CG Ranch presents a general issue that the trial court erred in granting Schlumberger's no evidence motion. But its substantive arguments only challenge Schlumberger's no evidence grounds related to breach and damages (and, relatedly, the trial court's exclusion of CG Ranch's summary-judgment evidence). CG Ranch does not challenge Schlumberger's alternative argument that it was entitled to summary judgment based on CG Ranch's failure to comply with the condition precedent. In fact, neither the words "condition precedent" nor any reference to Article 8.4(b) or (c) appear anywhere in CG Ranch's brief on appeal.

Because performance of a condition precedent is an essential element of a plaintiff's breach-of-contract case, summary judgment could have been rendered, properly or improperly, on that ground. *See Lidawi v. Progressive Cnty. Mut. Ins. Co.*, 112 S.W.3d 725, 734 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also Ellis*, 68 S.W.3d at 898. Therefore, CG Ranch needed to challenge this ground separately on appeal. *See Rosetta Res. Operating*, 645 S.W.3d at 227–28. But, even construing its briefing liberally, CG Ranch does not challenge this alternative ground on which the trial court could have based its summary judgment ruling in favor of Schlumberger.

As a result, we must affirm the summary judgment regarding CG Ranch's claim for breach of contract for misuse or abuse of equipment. *See id.*[5]

## D. Fraud

For similar reasons, we must affirm the trial court's judgment on CG Ranch's fraud claim against Schlumberger. On June 29, 2022, Schlumberger filed two separate motions—a no evidence motion for summary judgment and a traditional motion for summary judgment.

In the no evidence motion, Schlumberger asserted that CG Ranch could not produce any evidence to establish each element of its fraud claim. In the traditional motion, Schlumberger asserted that CG Ranch expressly disclaimed any reliance on Schlumberger's representations in Article 31.9 of the Agreement and accepted those terms again when it entered into the Amended Service Order. Schlumberger also argued that, even if CG Ranch did not disclaim reliance, any reliance by CG Ranch was not justified because the alleged representations directly contradicted the unambiguous terms of the Agreement.

---

[5] Because we conclude that CG Ranch has not challenged an independent ground supporting summary judgment, it is not necessary for us to consider CG Ranch's remaining arguments raised in issues two and three related to the trial court's sustaining of Schlumberger's objections to the Woodcock affidavit. *See* TEX. R. APP. P. 47.1; *Sosa v. Auto Club Indem. Co.*, No. 01-21-00312-CV, 2022 WL 3722396, at \*7 n.5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, pet. denied) (mem. op.).

19

In two separate orders, the trial court granted both the no evidence and the traditional motions for summary judgment. The orders did not identify the specific grounds for granting judgment.

As noted above, to obtain reversal on appeal, an appellant must challenge all possible grounds on which a summary judgment could have been granted, whether properly or improperly. *Rosetta Res. Operating*, 645 S.W.3d at 227; *Ellis*, 68 S.W.3d at 898. Consistent with that principle, when a defendant moves for both traditional and no evidence summary judgment, and the plaintiff fails to challenge both the traditional and no evidence grounds on appeal, an appellate court must affirm. *See Ursin v. Brand Energy Sols., Inc.*, No. 01-22-00651-CV, 2023 WL 3958375, at *3 (Tex. App.—Houston [1st Dist.] June 13, 2023, no pet.) (mem. op.).[6]

Here, in three separate places in its brief, CG Ranch lists the four issues presented on appeal.[7] In its fourth issue, CG Ranch generally states that the trial

---

[6]    *See also Munguia v. Justrod*, No. 14-18-01059-CV, 2021 WL 282569, at *1–2 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, pet. denied) (mem. op.).

[7]    CG Ranch's four issues read as follows:

> 1. The Service Agreement and Purchase Order contain a latent ambiguity which prevents the trial court from ruling as a matter of law. Thus, the Trial Court committed revers[i]ble error in granting Schlumberger's Partial Motion for Summary Judgment [ordering] CG Ranch take nothing on its claim for breach of contract as set forth in the CG Ranch's First Amended Petition under Section VII.A (Breach of Contract by Termination).

court committed reversible error in granting Schlumberger's no evidence motion for summary judgment and dismissing CG Ranch's breach of contract and fraud claims with prejudice.[8] But CG Ranch does not assign error to the trial court's grant of Schlumberger's traditional motion for summary judgment. And in the argument section of its brief, CG Ranch addresses the fraud elements challenged in Schlumberger's no evidence motion, but it does not address the separate grounds raised in Schlumberger's traditional motion—specifically, Schlumberger's disclaimer argument. We note that Schlumberger explicitly highlights this omission

---

2. The Trial Court committed revers[i]ble error sustaining the Schlumberger's objections to the affidavits of Robert Woodcock as conclusory.

3. The Court committed revers[i]ble error sustaining the Schlumberger's objection to the affidavits of Robert Woodcock for failure to designate as an expert. Robert Woodcock should be allowed to offer lay witness testimony as to the condition and value of the equipment he designed, built, and maintained.

4. The Court committed revers[i]ble error in granting Schlumberger's No Evidence Summary Judgment dismissing all CG Ranch's claims with prejudice.

[8] We note that, in one place in its brief, CG Ranch includes a fifth issue presented—that the trial court committed reversible error in denying its motion for new trial. Beyond this statement of the issue presented, CG Ranch presents no legal argument, citations to the record, or legal authorities relating to the denial of its motion for new trial. Accordingly, to the extent CG Ranch intended to challenge the trial court's denial of its motion for new trial on appeal, we hold that issue is waived for inadequate briefing. *See* TEX. R. APP. P. 38.1(i).

21

in its brief and points out that judgment could be affirmed on this basis alone, but CG Ranch did not file a reply brief to address the omission. *Id.*

Even construing its briefing liberally, CG Ranch's argument challenging the grant of the no evidence summary judgment on its fraud claim does not address the grounds, arguments, and evidence Schlumberger raised in its traditional motion for summary judgment.[9] *See id.*; *Munguia v. Justrod*, No. 14-18-01059-CV, 2021 WL 282569, at *2 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, pet. denied) (mem. op.). Accordingly, we must also affirm the trial court's summary judgment on CG Ranch's fraud claim against Schlumberger.

We overrule CG Ranch's fourth issue.

---

[9] CG Ranch includes a singular mention of the traditional motion for summary judgment in the last sentence of its brief before the prayer for relief—"Therefore, Schlumberger's Motion for Traditional and No Evidence Summary Judgment should be denied." As stated, however, at no point does CG Ranch challenge the grant of traditional summary judgment, much less the specific grounds, arguments, and evidence presented in Schlumberger's traditional motion. *See Mungia*, 2021 WL 282569, at *2 n.3.

22

## Conclusion

For all of these reasons, we affirm the trial court's final summary judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.